UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE and ORIX CAPITAL MARKETS, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | C.A. NO. 8-cv-1458 |
| MITCHELL KOBERNICK, ALLAN KLEIN, KENSINGTON CLUB APARTMENTS, LTD., KENSINGTON GREEN (MK), INC., and KENSINGTON GREEN (AK), INC., | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's[1] Amended Motion for Summary Judgment (Doc. No. 24), Defendants' Motion to Refer Case to Bankruptcy Court (Doc. No. 29), and Defendants' Supplemental Motion to Refer Case to Bankruptcy Court and Alternatively, Motion to Abate Case (Doc. No. 37). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' Motions should be denied and Plaintiff's Motion should be granted.

I.  BACKGROUND

This case arises out of a mortgage dispute related to Kensington Club I Apartments ("KCI"), a 182-unit apartment, located in Houston, Texas.[2] KCI was owned by Kensington Club Apartments, Ltd. ("KCA"). (Doc. No. 27, Ex. 1, ¶ 6.) KCA executed a promissory note

---

[1] Plaintiff's briefing explains that, while ORIX brings the lawsuit on behalf of Wells Fargo, Wells Fargo is the only Plaintiff in the case.
[2] Unless otherwise noted, these facts are uncontested. For the purpose of this Motion only, any contested facts will be presented in the light most favorable to Defendants.

("Note") in the original principal amount of $7,150,0000, payable to Holliday Fenoglio, LP. (Doc. No. 24, Ex. B.) To secure the Note, KCA executed a Deed of Trust, Assignment of Leases and Rents and Security Agreement ("Deed of Trust"), pledging KCI as collateral. (Doc. No. 24, Ex. C.) According to the terms of the Note, KCA has non-recourse obligations, but the Note also specifies "carve out" situations which impose personal liability on KCA and its general partners, Defendants Kensington Green (MK) and Kensington Green (AK). Specifically, the Note provides:

> Notwithstanding the foregoing, the agreement of Lender not to pursue recourse liability as set forth in subsection (a) above SHALL BECOME NULL AND VOID and shall be of no further force and effect in the event of Borrower's default under sections 4.2 and 8.2 of the Security Instrument, or if the Property or any part thereof shall become an asset in (i) a [v]oluntary Bankruptcy or insolvency proceeding or (ii) an involuntary bankruptcy or insolvency proceeding (A) which is commenced by any party controlling, controlled by or under common control with Borrower (the "Borrowing Group") or (B) in which any member of the Borrowing Group objects to a motion by Lender for relief from any stay or injunction from the foreclosure of this Security Instrument or any other remedial action permitted hereunder or under the Note or the other Loan Documents.

(Doc. No. 24, Ex. B, ¶ 14(c)) (emphasis in original). Another carve out situation described in the Note is a default under Section 8.2 of the Deed of Trust, which is an acceleration clause:

> Borrower agrees that the sale, conveyance, mortgage, grant, bargain, encumbrance, pledge, assignment or other transfer of the Property, or any part thereof, without the prior written consent of Lender, shall constitute an event allowing Lender to declare the entire unpaid debt to be immediately due and payable without notice of intention to accelerate, notice of acceleration, demand on any other notice.

(Doc. No. 24, Ex. C, ¶ 8.2.) The Note also includes a similar acceleration clause, which states that, in the event of a default, all amounts owing on the Note shall, without notice, become immediately due and payable at the option of the lender ("Acceleration Clause"). (Doc. No. 24, Ex. B, ¶ (3)(a).)

Defendants Mitchell Kobernick and Allan Klein executed the Guaranty of Recourse Obligations of Borrower (the "Guaranty") as part of the transaction, guaranteeing KCA's

performance under the carve out provisions of the Note, Deed of Trust, and other loan documents. (Doc. No. 24, Ex. D.) The "Guaranteed Recourse Obligations of Borrower" include liability for the entire debt in the event of a default under section 4.2 or 8.2 of the Deed of Trust. (*Id.*) Wells Fargo obtained the Note and Deed of Trust as part of a Commercial Mortgage-Backed Securities transaction. Plaintiff ORIX Capital Markets, LLC ("ORIX") brings this action on behalf of Wells Fargo.

KCA conveyed KCI to Communidad Kensington Club I, LLC ("Communidad"), a Texas non-profit corporation, in December 2003 in exchange for a note payable to KCA and subject to Wells Fargo's first lien mortgage. (Doc. No. 27, Ex. 1, ¶ 7.) The sole member of Communidad is Communidad Corp. The transfer from KCA to Communidad was one of many in which buildings were sold to Communidad Corp. to provide low- and moderate-income housing. (*Id.*) Communidad Corp. is tax-exempt under Sect. 501 (c)(3) of the Internal Revenue Code. (*Id.*) The Texas Tax Code provided tax exemptions from real estate tax for Community Housing Development Organizations ("CHDOs"). Defendant Kobernick was named as one of the three managers of Communidad. (Doc. No. 27, Ex. D, ¶ 3.01(a)). Communidad's regulations require its three managers to act collectively. (Doc. No. 27, Ex. D, ¶ 3.01(b)). The filing of a voluntary bankruptcy petition requires the unanimous consent of the managers, as well as the written consent of each member. (*Id.* at ¶¶ 3.01(b) and 3.02(j).) There are no officers who have authority over the managers.

According to Defendant Kobernick, KCA had to transfer the property by December 31, 2003 in order for the property to qualify for the tax exemption. (*Id.*) Kobernick later wrote to Plaintiff, "Because of the short window of opportunity, there was no time in December to request the Lender's prior approval for the proposed transaction." (Doc. No. 27, Ex. C.) As part of the

transfer, KCA and Communidad agreed to "unwind" the transaction on the demand of either party in case Wells Fargo did not consent to the transaction in written or if the real estate tax exemption was not approved ("the Unwind Agreement"). (Doc. No. 27, Ex. 1, ¶ 7.) As a result, the deed was executed and delivered to Communidad, but it was not recorded. (*Id*.) KCA did not seek or obtain the prior writing consent of Wells Fargo for the sale or conveyance of KCI to Communidad. (Doc. No. 27, Ex. C.) Communidad also executed and delivered a promissory note in KCA's favor.

On March 10, 2004, Kobernick wrote to Wachovia, who was at that time servicing the loan, and detailed "the structure of the transaction and the nature and benefits of the tax exemption." (Doc. No. 27, Ex. 1, ¶ 9.) Wells Fargo did not provide written consent to the transaction. (*Id*.) In August 2004, Kobernick wrote Wachovia again, explaining KCA's motives for transferring the property. According to Kobernick, the rental market in Houston was, at that time, "extremely soft," and KCA was "forced to compete aggressively by cutting rates on some apartment units and offering move in concessions." (Doc. No. 27, Ex. A.) KCI was not generating enough cash to service the Note and maintain the property. *Id*. Kobernick represented that Communidad had approached KCA with "an opportunity" to qualify for an exemption from Texas real estate tax. In order to qualify, KCI had to present evidence of its non-profit status prior to the end of 2003; if it did, KCI would be tax exempt from 2004 onwards. (*Id*.) After the property was transferred to Communidad, it was "able to justify to the appraisal district that it met the criteria for non-profit involvement by showing them [sic] the unrecorded deeds in favor of the non-profit." (*Id*.) As a result, the tax exemption was approved on June 10. (Doc. No. 27, Ex. B.) There was no change in the property's management or the involvement of

the principals, and Kobernick represented that the existing borrowers could be "characterized as the current and continuing owners of the property."

Kobernick requested that KCI's tax escrow account be reevaluated for 2004, and the excess refunded to the borrowers. (*Id.*) Wells Fargo and ORIX complied with this request and recognized the tax-exempt status of the property resulting from the transfer. In 2004, 2005, and 2006, Wells Fargo returned the amount held in escrow for taxes to Communidad Kensington, and no tax escrow payment was required beginning in April 2007. (Doc. No. 27, Ex. 1, ¶ 11.)

Kobernick wrote a third letter to Wachovia in October 2004, in which he included a legal opinion from his lawyer as to why the transfer from KCA to Communidad did not actually constitute a transfer of ownership. He pointed out that the sales contract provided that the borrower was to receive the note for the difference between the sales price and the existing debt, meaning that the borrower would have the same ability to regulate cash flow. Further, he explained that "I am personally one of the three managers of [Communidad], and am a key principal of the borrower. The LLC regulations allow me to block any sale by the LLC, or bankruptcy filing, making the entity bankruptcy remote." (Doc. No. 27, Ex. B.) Finally, Kobernick reiterated that the key principals of the borrower who had signed the carve outs in the loan were still in place and had not been released. (*Id.*) Kobernick concluded the letter by saying, "I understand that a strict interpretation of the loan documents could allow you to treat this proposed transaction as a sale and or transfer of ownership." (*Id.*) Kobernick encouraged the bank to look at the transaction "more broadly"; in the instance that the transfer was treated as a change of ownership, he asked to proceed with the assumption approval request.

On October 5, 2004, ORIX acknowledged that it had received KCA's request to approve the transfer. It noted that the acknowledgment letter was not consent to the transfer. (Doc. No.

24, Ex. K.)  In January 2008, ORIX, on behalf of Wells Fargo, sent a Notice of Default, Acceleration and Revocation of License to Receive and Collect Rents notifying Defendants and KCA that the Note was in default and that all amounts due and owning pursuant to the Note, the Deed of Trust, and loan documents were immediately due and payable. (Doc. No. 24, Ex. I.) The Acceleration Notice identified the grounds of default as follows:  KCA conveyed KCI to Communidad Kensington Club on January 1, 2004 without the prior written consent of the Lender. (Doc. No. 24, Ex. I.) A foreclosure sale was noticed on the Property for April 1, 2008.

On March 31, 2008, Communidad filed a voluntary petition under Chapter Eleven of the Bankruptcy Code, No. 8-32127, which is currently pending before Judge Karen Brown ("Communidad Bankruptcy"). (Doc. No. 24, Ex. F.) The petition was signed by Defendant Kobernick in his capacity as manager of Communidad. (*Id.*) Plaintiff filed the instant case in state court in April 2008; KCA timely removed. (Doc. No. 1.) On June 26, 2008, Wells Fargo filed against KCA an involuntary petition of bankruptcy under Chapter Eleven of the Bankruptcy Code in the Southern District of Texas, No. 8-34042 ("the involuntary Bankruptcy"). On October 10, 2008, Judge Brown denied Wells Fargo's Motion for Relief from Stay in the Communidad Bankruptcy. On Plaintiff's motion, this Court subsequently dismissed KCA from the instant case in October 2008, leaving KCA's guarantors and general partners as the sole Defendants. (Doc. No. 20.)

Plaintiff seeks to force Defendants to pay the principal indebtedness on the Note, all accrued and unpaid interest, late fees, default interest, attorney's fees, costs of collection, and any other amounts due and payable under the Notes, the Guaranty, and related loan documents. Plaintiff argues that Defendants have recourse liability under the carve out provisions of the Note because KCA violated Section 8.2 of the Deed of Trust, which prohibits KCA from transferring

the property without the written consent of Wells Fargo. Plaintiff also argues that Defendants have recourse liability because Defendant Kobernick, a member of the Borrowing Group, filed the Communidad Bankruptcy listing KCI as Communidad's sole asset, which violates the terms of the Note. As the final grounds for recourse liability, Plaintiff asserts that Defendants violated both the Note and Guaranty by opposing Wells Fargo's Motion for Relief from Stay in the Communidad Bankruptcy. Plaintiff moves for summary judgment. Defendants, in response, move to transfer the case to Judge Brown, who is handling the Communidad Bankruptcy.

## II. REFERRAL TO THE BANKRUPTCY COURT

The Court must first decide whether or not the case should be referred to the bankruptcy court. Bankruptcy courts have power to determine "all core proceedings arising under Title Eleven, or arising in a case under title 11" and to enter appropriate orders and judgments. *Matter of Wood*, 825 F.2d 90, 95 (5th Cir. 1987) (citing 28 U.S.C. § 157(b)(1)). The Fifth Circuit has held that a proceeding is core if it invokes a substantive right provided by title 11 or if, by its nature, it could arise only in the context of a bankruptcy case. *Wood*, 825 F.2d at 95. If the proceeding is not core, then a bankruptcy court may only submit proposed findings of fact and conclusions of law to the district court for that court's de novo review. *Ebaseone Corp. v. National Union Fire Ins. Co.*, Bankruptcy No. 01-31527-H4-7, 2006 WL 2405732 at * 2 (Bankr. S.D. Tex. June 14, 2006).

The instant case does not present a core proceeding. This is a basic contract dispute in which a creditor is trying to recover from guarantors under the terms of a loan agreement. Several bankruptcy courts have held that actions against third-party guarantors of the debtor's debts are not core proceedings. *Travelers Insurance Company v. Goldberg*, 135 B.R. 788, 791 (D.Md. 1992) (collecting cases). The Court must now resolve whether it should, over the

objection of Plaintiff, refer this non-core proceeding to the bankruptcy court for proposed findings of fact and conclusions of law.

In *Holland America Insurance Company v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir. 1985), the Fifth Circuit offered general principles to guide a district court in its decision to refer a case to the bankruptcy court. First, the district court should keep "one eye cocked" toward the Supreme Court's decision in *Northern Pipeline Const. v. Marathon Oil Pipe Line Co.*, 458 U.S. 50 (1982), which held that bankruptcy courts do not have original jurisdiction over proceedings that do not intimately involve the debtor-creditor relationship and that rest solely on issues of state law. *Holland*, 777 F.2d at 998 (citations omitted). In the instant case, KCA removed the case to federal court based on 28 U.S.C. § 1452 and § 1334, asserting that the case was related to the Communidad Bankruptcy. (Pet. Removal ¶ 6.) As Plaintiff point out in its First Amended Complaint, however, this Court has a separate ground for jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; (Pl. First Am. Compl. ¶8.) The parties dispute whether the instant action is sufficiently related to the Communidad Bankruptcy; however, this Court's diversity jurisdiction is uncontested.

Second, considerations of judicial economy should bear on the decision of whether to refer to the bankruptcy court. *Holland*, 777 F.2d at 998. "The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Id.* Defendants argue that, in resolving the Communidad Bankruptcy, Judge Brown will have to address many issues pertinent to the instant case, namely, whether Wells Fargo can properly charge Communidad $850,000 in interest for the breach of the Note as well as the total value of the property. Plaintiff responds that the sole issue to resolve is whether

Defendants now have recourse liability under the terms of the Loan Documents. Any findings of fact and conclusions of law Judge Brown renders on the issue of recourse liability will be subject to this Court's de novo review. It would therefore be more efficient for this Court to rule on the issue of recourse liability in the first instance so that the parties will not have to spend additional fees rehashing this issue on appeal.

Finally, the Fifth Circuit instructed district courts to consider whether a jury demand had been filed by either side. *Id.* Except under the limited circumstances set out in 28 U.S.C. § 157(e), a bankruptcy court cannot conduct a jury trial. *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 761 (S.D. Tex. 2007). The Court will not presume that a litigant has knowingly and willfully surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidentally related to the bankruptcy process. *Id.* at 762-763 (citing *Mirant Corp. v. The Southern Co..*, 337 B.R. 107, 121 (N.D. Tex. 2006)). The parties' Joint Disclosures submitted pursuant to FED. R. CIV. P. 26 indicate that Defendants demand a jury. (Doc. No. 6, ¶ 18.) While Defendants' Motion to Refer to Bankruptcy Court "might be construed as inconsistent with an intention to seek a jury trial," the record does not indicate that they have knowingly withdrawn their right to a jury trial. *See, e.g., Veldekens*, 362 B.R. at 769. This factor therefore weighs in favor of this Court keeping the case. The Court will therefore retain the case.

### III.  SUMMARY JUDGMENT

#### A. Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### B. Analysis

The only summary judgment issue before the Court is whether Defendants have recourse liability for KCA's breach of the Note. Plaintiff Wells Fargo presents three different theories for recourse liability: first, Defendant Kobernick, a member of the Borrowing Group, initiated Communidad's voluntary bankruptcy; second, KCA opposed Wells Fargo's Motion for Relief from Stay; and third, KCA transferred the property to Communidad without the Lender's written consent. Plaintiff contends, and Defendants do not dispute, that it is the holder in due course of the Note and Guaranty.

#### 1. Kobernick's Role in the Communidad Bankruptcy

Plaintiff alleges that Kobernick's role in filing the Communidad Bankruptcy triggers recourse liability for Defendants. The Note defines the Borrowing Group as "a party controlling,

controlled by or under common control with the Borrower." Defendants assert that Kobernick does not control the Borrower. They argue that "he is but one of the general partners whose unanimous consent is required to act." (Doc. No. 43 at 19.) Defendants do not dispute, however, that Kobernick executed both the Note and Deed of Trust, and the Guaranty, as President of KCA's general partner. He is also a Guarantor of the Note. (Doc. No. 24, Ex. B-C.) Kobernick clearly exercised control over KCA.

Defendants also argue that Kobernick did not exercise complete control over Communidad because the Communidad regulations required the unanimous consent of all three managers to file a voluntary bankruptcy. This argument is untenable. It is undisputed that Kobernick consented to the Communidad Bankruptcy and did not withdraw his position as a manager before it was filed. In fact, Kobernick himself signed the Communidad Bankruptcy petition. Moreover, as Kobernick explained to Wachovia in his October 2004 letter, he had the ability to stop the Communidad Bankruptcy. Kobernick's attempt to take the opposite position is not persuasive. The Court finds that Kobernick's role in the Communidad Bankruptcy is an independent ground for recourse liability.[3]

## 2. KCA's Opposition to Plaintiff's Motion for Stay

The parties seem to dispute whether Plaintiff is arguing that Defendants opposed its Motion to Stay in the Communidad Bankruptcy or the Involuntary Bankruptcy. Communidad opposed the Motion to Stay in the Communidad Bankruptcy. (Bankruptcy Petition No. 8-32127, Doc. No. 59.) KCA opposed the Motion to Stay in the Involuntary Bankruptcy. (Bankruptcy Petition No. 8-34042, Doc. No. 15.) Defendants argue that a member of the Borrowing Group

---

[3] Other courts have enforced similar provisions triggering a guarantor's liability upon the debtor filing bankruptcy. *See 111 Debt Acquisitions LLC v. Six Ventures, Ltd.*, No. C2-08-768, 2009 WL 414181, at *11 (S.D. Ohio Feb. 18, 2009). There, as in the instant case, the guarantor signed the debtor's bankruptcy petition.
While the Court believes that enforcing sections 4.2 or 8.2 against KCA itself might raise public policy concerns, these same concerns do not exist as to Defendants, who acted general partners and guarantors. *See id.*

did not oppose the Motion to Stay in the Communidad Bankruptcy, and that KCA's opposition to the Motion to Stay in the Involuntary Bankruptcy should not trigger recourse liability because Plaintiff initiated the Involuntary Bankruptcy. Plaintiff does not respond to either argument. Section 14(c) of the Note unambiguously states that Plaintiff can pursue recourse liability if the property becomes an asset in an *involuntary* bankruptcy or insolvency proceeding in which a member of the Borrowing Group objects to Plaintiff's Motion for Stay.

It is against public policy for a debtor to waive the pre-petition protection of the Bankruptcy Code. *In re Huang*, 275 F.3d 1173, 1177 (9th Cir. 2008). As to waivers of the automatic stay, however, the majority view, and the trend in bankruptcy decisions, is that pre-bankruptcy waivers of the automatic stay are sometimes enforceable. *In re Pease*, 195 B.R. 431, 433 (Bankr. D.Neb. 1996) (collecting cases); *see also In Re Bryan Road*, LLC, 382 B.R. 844, 848 (Bankr. S.D.Fla. 2008). Some courts have dissented, however, and held that waivers of the automatic stay are unenforceable. *Id.* (collecting cases). Bankruptcy courts have typically enforced the waiver agreements arising from forbearance agreements or previous Chapter Eleven filings. In dicta, these courts have expressed a general proposition that pre-petition waivers of stay of relief will be given no particular effect if they are part of the original loan documents but will be given greater effect if they are entered into during the course of prior bankruptcy proceedings. *In Re Bryan Road*, 328 BR at 848; *In re Atrium High Point Ltd. Partnership*, 189 B.R. 599, 607 (Bankr. M.D.N.C. 1995) (noting that a pre-petition waiver the court held enforceable was not contained in the original loan documents but rather in the debtor's reorganization plan).

The instant case is distinguishable from those cases which enforced the pre-petition waiver of stay because the waiver was contained in the Note itself, not a forbearance agreement

or bankruptcy plan negotiated after Defendants' alleged default. Defendants received no additional consideration for relinquishing their right to the automatic stay, such as additional time to cure the alleged defaults. Additionally, if the Court chose to enforce such a provision, waivers of stay would be included in every original loan document, effectively eliminating this important bankruptcy protection. For this reason, the Court declines to find that Defendants have recourse liability based on KCA's opposition to Plaintiff's Motion for Stay in the Involuntary Bankruptcy.

### 3. KCA's Transfer to Communidad

The facts surrounding KCA's Transfer of KCI to Communidad are, for the most part, not disputed. Defendant Kobernick concedes in his letters to Plaintiff that KCA transferred KCI to Communidad. While Kobernick's letter suggests that the transfer should not be viewed as a change of ownership, Defendants do not reassert these arguments in their briefing. The Court therefore concludes that, under the unambiguous terms of the contract, KCA's transfer of KCI to Communidad triggered recourse liability. Guarantors are responsible for this liability under the Guaranty Agreement. Defendants raise several affirmative defenses to Plaintiff's theory on the transfer, the merits of which will now be discussed in turn.

#### a) Statute of Limitations

Defendants' first argument is that Plaintiff's claim is barred by the Texas state statute of limitations. In Texas, a plaintiff must bring a cause of action to recover a debt no less than four years after the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004. Defendants submit that, since the property was conveyed to Communidad on December 31, 2003, Plaintiff was required to bring suit by December 31, 2007. The instant action was not filed, however, until April 4, 2008. (Doc. No. 1, Ex. B.) In response, Plaintiff contends that the

cause of action did not accrue until the loan matured. The Court agrees with Plaintiff's position. Texas law provides that, "If a series of notes or obligations or a note or obligation payable in installments is secured by a real property line, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." TEX. CIV. PRAC. & REM. C. § 16.035. Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. *Id.* Rather, the action accrues only when the holder actually exercises its option to accelerate. *Id.* (citing *Hamman v. H.J. McMullen & Co.*, 62 S.W.2d 59, 61 (1933)).[4] Plaintiff did not exercise its right to accelerate the Note until January 30, 2008; therefore, the instant lawsuit was timely filed. The Court further notes that Plaintiff's other theories for recourse liability are not barred by the statute of limitations.

Defendants cite *Crow v. Willard*, 110 S.W.2d 161 (Tex. 1937), which applied the four year statute of limitations when the defendant defaulted in its obligations created by a deed of trust. *Crow* relied on an earlier statute that is substantially similar to section 16.035(e). 1931 TEX. GEN. LAWS ch. 136, art. 5520. Defendants argue that this holding distinguishes notes from deeds of trusts, and that section 16.035(e) only applies to notes. The Court disagrees with this interpretation. As an initial matter, an acceleration clause was not at issue in *Crow*, so the Court did not discuss when the claim accrued under the predecessor version of § 16.035(e).

---

[4] Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Id.* (citing *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 892 (Tex.1991); *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233 (Tex.1982)). Defendants argue that they did not receive a notice of intent to accelerate; however, KCA waived its right to notice of intent to accelerate and notice of acceleration in Section 8.2 of the Deed of Trust. (Doc. No. 24, Ex. C.) The waiver of notice is construed in the Deed of Trust, which is incorporated into the Note. (Doc. No. 24, Ex. B at ¶ 6.) The Deed of Trust, Note, and Guaranty were executed contemporaneously and must be interpreted together. *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex. 2004).

Additionally, *Crow*'s holding does not distinguish the note from the deed of trust for the purposes of applying the statute of limitations. Rather, in *Crow*, the deed of trust had been sufficiently merged into the extension contracts so that when defendant assumed the note he also assumed the deed of trust. For these reasons, the court applied the four year statute of limitations.

Furthermore, as discussed above, the Deed of Trust and the Note both incorporate each other. The Deed of Trust and the Note, along with the Guaranty, were also executed contemporaneously; agreements executed at the same time, with the same purpose, and as part of the same transaction should be construed together. *Prudential*, 148 S.W.3d at 135.

### b) Section 9.1 of the Deed of Trust

Defendant argues that Plaintiff failed to provide a Notice of Default and Opportunity to Cure, as required by Section 9.1 of the Deed of Trust. Defendants allege that Plaintiff breached the provision by failing to notify Defendants that it considered the transfer of KCI to be a default. As a consequence, Defendants did not have the opportunity to cure the breach. In support of its position, Defendants cite section 9.1(m) of the Deed of Trust:

> [I]f for more than thirty (30) days after notice from Lender, Borrower shall continue to be in default under any other term, covenant or condition of the Note, this Security Instrument or the other Loan Documents in the case of any default which can be cured by the payment of a sum of money or for thirty (30) days after notice from Lender in the case of any other default, provided that if such default cannot reasonably be cured within such thirty (30) day period and Borrower shall have commenced to cure such default within thirty (30) day period and thereafter diligently and expeditiously proceeds to cure the same, such thirty (30) day period shall be extended for so long as it shall require Borrower in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of ninety (90) days.

On January 31, 2009, ORIX simultaneously notified Defendants that it considered the transfer to be a breach and that it had accelerated the loan. Defendants allege that this action deprives it of its contractual right to cure.

Plaintiff replies that Defendants' reliance on Section 9.1(m) is misplaced. As noted above, section 8.2 of the Deed of Trust provides that, in the case of an unauthorized transfer of the property, lender shall have the right to declare the entire debt due and payable "without notice of intention to accelerate, notice of acceleration, demand or any other notice." Section 12.3 of the Deed of Trust further provides:

> Borrower shall not be entitled to any notice of any nature whatsoever from the Trustee or Lender except with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender to Borrower and except with respect to matters for which Trustee or Lender is required by applicable law to give notice, and Borrower hereby waives the right to receive any notice from the Trustee or Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Trustee or Lender to Borrower.

Since the transfer of KCI was not "a matter for which [the] Security Instrument specifically and expressly provides for the giving of notice," Plaintiff argues that notice was specifically disclaimed.

Plaintiff further points out that section 9.1(a)-(l) lists and define "Events of Default." Section 9.1(d) is described as an event of default: "if Borrower ... sells, conveys, mortgages, grants, bargains, encumbers, pledges, assigns, or otherwise transfers the [p]roperty or any part thereof, without prior written consent of the Lender ...." Section 9.1(d), unlike section 9.1(m), does not require Plaintiff to provide Defendants with notice or the opportunity to cure. Plaintiff argues that section 9.1(m), on which Defendants rely, is merely a catchall provision that applies to "other" defaults. But, Plaintiff contends, section 9.1(m) applies only to the defaults not previously defined in sections 9.1(a)-(l). Plaintiff asserts that the specific provision of 9.1(d) should control over the general catchall provision of section 9.1(m).

The Court agreed with Plaintiff that the notice requirement of section 9.1(m) applies only to events of "other default" and not to section 9.1(d). Contract terms are to be given their plain,

ordinary, and generally accepted meaning and the more specific provisions of a contract will control over the general. *Ayres Welding Company, Inc. v. Conoco, Inc.*, 243 S.W.3d 177, 181 (Tex. App.—Houston [14th Dist.] 2007) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-134 (Tex. 1994)).

Finally, as Plaintiff notes, Defendants have recourse liability under the terms of the Guaranty in case of a Default under section 8.2. Section 8.2 does not require any declaration of default or that Plaintiff invoke the due on sales clause. The transfer of the property, as here, results in recourse liability for Defendants.

### c) Waiver

Next, Defendants contend that Plaintiff waived its rights to declare a default by refunding Defendants' monthly escrow deposits after the transfer of the property to Communidad rendered it tax exempt. Plaintiff does not dispute that it accepted these payments without declaring default; rather, it asserts that the fact that it waited to exercise its rights and continued to perform does not waive its rights under the Note. Additionally, Plaintiff points out that the Deed of Trust contains a nonwaiver clause.

Waiver is the intentional relinquishment of a right actually known, or intentional conduct inconsistent with claiming that right. *Ulico Casualty Company v. Allied Pilots Association*, 262 S.W.3d 773, 778 (Tex. 2008) (citations omitted). The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Id.* (citation omitted).

In *Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640 (Tex. 1996), the Texas Supreme Court addressed the issue of waiver in a breach of contract case. Tenneco shared

ownership of a natural gas plant with several other entities. The plant's ownership was governed by a contract which provided that no sale, transfer, or assignment of an ownership interest would be effective until the assignee agreed to put an equal volume of raw material through the facility as that of the selling owner. Tenneco transferred its ownership interest in the plant to its subsidiary, which did not enter into an agreement to process a certain volume of material as required by the contract. Three years passed, during which time the other owners "accepted [the subsidiary] as a fellow owner without enforcing [the contract]." 925 S.W.2d at 644. The other owners executed several amendments and ratifications to the contract with the subsidiary acting as a signatory, and afforded the subsidiary the right to attend owners' meeting, the right to receive a share of revenues, the obligation to pay a share of costs, and the right to vote on issues requiring owner approval. This acceptance lasted for three years, until the other owners filed suit against Tenneco. The Texas Supreme Court held that the other owners had waived their right to object to the transfer, holding "this extended inaction by the plant owners, coupled with their acceptance of [Tenneco] as a plant co-owner, established an intentional waiver of any rights concerning the [transfer]." *Id.* at 643.

In the instant case, Wells Fargo did not declare a default until one day after the loan matured, four years after the breach occurred. During the interim, Plaintiff learned of the breach through Kobernick's letters and accepted Communidad's monthly mortgage payments. Most importantly, however, it accommodated Communidad as KCI's new owner by refunding the monthly escrow payments in three different years, and suspending them completely after 2007. Plaintiff has therefore waived its right to recourse liability based on KCA's transfer of the property to Communidad. Furthermore, under Texas law, waiver by implication should not be inferred contrary to the intention of the party whose rights would be injuriously affected thereby,

unless the opposite party has been misled to his or her prejudice. *Enserch Corp. v. Rebich*, 925 S.W.2d 75, 82 (Tex. App.—Tyler 1996, writ dism. agr.). In the instant case, Defendants were misled and prejudiced by Plaintiff's refund of the escrow money from 2004-2006, and the suspension of the escrow payments in 2007, because, had they been notified that Plaintiff considered the transfer a breach, they could have reversed the transfer to Communidad under the Unwind Agreement. The October 2004 letter from ORIX which indicated that Plaintiff was reviewing the transfer, and that the letter was not to be construed as consent to the transfer, was sent before Plaintiff refunded the escrow payments.

Plaintiff argues that Defendant's waiver defense fails because the Deed of Trust contains the following clause: "[t]he failure of Lender to insist upon strict performance of any term thereof shall not be deemed a waiver of any term of this Security Instrument." (Doc. No. 24, Ex. C at § 10.7(a).) Although nonwaiver clauses may themselves be waived, they are generally considered valid and enforceable. *A.G.E. Inc. v. Buford*, 105 S.W.3d 667, 676 (Tex. App.—Austin 2003, pet. denied) (citing *Straus v. Kirby Court Corp.*, 909 S.W.2d 105, 108-109 (Tex. App.—Houston [14 Dist.] 1995, writ denied)). Both parties cite *Regents International Hotels, Ltd. v. Las Colinas Hotels Corporation*, 704 S.W.2d 101, 104-105 (Tex. App.—Dallas 1985, no writ), in which the Texas Court of Appeals held that a nonwaiver clause, which contained a written instrument exception, did not preclude a waiver defense because the plaintiff presented a written instrument indicating waiver. The court held that a jury "may find waiver if it finds that after ... the condition ha[s] failed, [Plaintiff] clearly expressed [its] intent to continue the contracts." Plaintiff responds that *Regents* does not apply because the nonwaiver clause in the instant case did not contain a written instrument exception.

Subsequent to *Regents*, however, Texas Appeals Courts have held that, in cases where the nonwaiver clause did not contain a written instrument exception, the provision may likewise be waived by the party's conduct. *Enserch Corp. Inc.*, 925 S.W.2d at 82; *see also Winslow v. Dillard Dept. Stores*, 849 S.W.2d 862, 864 (Tex. App.—Texarkana 1993, writ denied); *Zwick v. Lodewijk*, 847 S.W.2d 316, 318 (Tex. App.—Texarkana 1993, writ denied). In *Straus*, the Court of Appeals held that whether a party waived its nonwaiver clause must be determined on a case-by-case basis. 909 S.W.2d at 108. In the instant case, Plaintiff repeatedly refunded money to KCA after receiving notice of the transfer to Communidad. It therefore waived the nonwaiver clause as to its right to declare the transfer a breach of the contract. Plaintiff did not attempt to renegotiate the Deed of Trust or reassert the Note after Defendants breached the Note. Because the Court finds that Plaintiff waived this right, it will not reach Defendants' estoppel argument.

## IV. CONCLUSION

Defendants' Motion to Refer Case to Bankruptcy Court and Supplemental Motion of Defendants to Refer Case to Bankruptcy Court are **DENIED**. Because Kobernick initiated the Communidad Bankruptcy, Plaintiff's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this 28 day of May, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**